In the Matter of the Application of WALTER RIEB, Appellant, for an Order Directing that IRVING E. ETTINGER Proceed to Arbitration Pursuant to the Terms of Contract Entered into between IRVING E. ETTINGER, Respondent, and WALTER RIEB and BENSON SHIRT COMPANY, INC., Dated December 30, 1921.

First Department, May 18, 1923.

**Arbitration — motion to compel parties to proceed to arbitrate under agreement — order granted.**

An agreement was entered into by the owners of all the capital stock of a corporation for the purpose of equalizing the ownership and control of the corporation and for its operation. The agreement contained an arbitration clause to the effect that in case any controversy should arise concerning the terms of the agreement, the interpretation or meaning thereof, or the carrying out of any of the terms, the parties should proceed to arbitrate their differences before resorting to legal proceedings. The agreement contained a provision that in case the corporation should suffer a loss during the fiscal year ending December 31, 1922, the corporation should be dissolved. The petitioner alleges that the parties had a dispute whether to continue the business or not, that the business came to a standstill at the end of June, 1922, and that the respondent had instituted a suit for salary claimed to be due.

*Held*, that it is clear that whether or not the business should continue was an issue which was covered by the arbitration clause of the agreement and the motion to compel arbitration should, therefore, have been granted.

APPEAL by the petitioner, Walter Rieb, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 15th day of November, 1922, denying his motion to compel the respondent to proceed to arbitration.

*Mervyn Wolff* [*Benjamin Jaffe* of counsel], for the appellant.

*Mark E. Goldberg* and *Samuel S. Goldberg* [*Samuel S. Goldberg* of counsel], for the respondent.

FINCH, J.:

The parties were the owners of all the capital stock of a certain corporation. Desiring to equalize the ownership and control of the corporation and provide for the operation thereof, they entered into a written agreement. The business of the corporation was not prosperous, and in order to lessen expenses it was considered advisable to consolidate with another manufacturing concern. To this end a proposed agreement was made between the parties herein and the firm with which it was proposed to consolidate, which proposed agreement provided that the first mentioned agreement between the parties hereto should be canceled and declared null and void. The agreement of consolidation, however, was not carried out but was abandoned (there is a dispute as to the cause, but apparently no dispute as to the fact of abandonment), so that the original agreement between the parties obtains; hence the ground upon which arbitration was refused, namely, that the original agreement was superseded by the consolidation agreement, is erroneous.

The petitioner alleges that the parties had a dispute whether to continue the business or not, that the business had come to a standstill about the end of June, 1922, and that the respondent had instituted a suit for salary claimed to be due from the corporation. It is clear that whether or not the business should be continued was an issue which was covered by the arbitration clause of the agreement. Said arbitration clause provides, in part, as follows:

" In case any controversy shall arise between the party of the second part and the party of the third part, concerning the terms of this agreement, the interpretation or meaning thereof, or the carrying out of any of the terms or provisions entered into between them, then and in that event, each of the parties of the second part and the third part, shall select an arbitrator. * * * A *bona fide* attempt to adjust all differences or controversies by arbitration is a condition precedent to the beginning of any legal proceeding."

With reference to the continuation of the business, the agreement contains the following provisions:

" *Second.* Irving E. Ettinger, party of the second part, agrees, as a means of payment for said one hundred ten (110) shares of capital stock, to deliver to said Walter Rieb, party of the third part, his certain promissory note, in the sum of Eleven Thousand

Dollars ($11,000), bearing interest, and maturing December 31st, 1922, together with the aforementioned one hundred ten (110) shares of capital stock of Benson Shirt Company, Inc., party of the first part, as collateral security for the payment of said notes aforementioned.

"*Fourth.* \* \* \* that is to say, if the business of the Benson Shirt Company, Inc., party of the first part, should show a profit at the end of any year during the life of this agreement, one-half of said profit shall be credited to Irving E. Ettinger, party of the second part, and one-half of said profits shall be credited to Walter Rieb, party of the third part, and Irving E. Ettinger, party of the second part, agrees to apply and turn over two-thirds of the moneys so credited to his account, towards payment of the indebtedness of Irving E. Ettinger, party of the second part, represented by his note hereinbefore mentioned.

"*Fifth.* So long as the business of the Benson Shirt Company, Inc., party of the first part, shows a profit at the end of each fiscal year (fiscal year ending December 31st); and so long as Irving E. Ettinger, party of the second part, contributes two-thirds of his share of his profits, if there be profits, as part payment on the note, the note herein mentioned, shall automatically renew itself, or be extended for a further period of one year, it being the intention and spirit of this agreement, to have the note and interest paid out of the share of profits of the Benson Shirt Company, Inc., party of the first part, accruing to the benefit of Irving E. Ettinger, party of the second part. All moneys paid on account of note shall be endorsed thereon, at the time such payment is made.

"*Sixth.* In case the business of Benson Shirt Company, Inc., party of the first part, should earn no profits by the end of the first fiscal year ending December 31st, 1922, then and in that event no payment shall be made upon the note, and the business shall be continued under the same terms and conditions for a further period of six (6) months ending June 30th, 1923, and the note aforementioned shall automatically be renewed and extended to that date.

"*Seventh.* In case, however, the business of Benson Shirt Company, Inc., party of the first part, should sustain and suffer a loss by the end of the first fiscal year ending December 31st, 1922, then and in that event, the corporation shall be forthwith dissolved, and for this purpose each of the parties hereto, gives the other, full power of attorney to proceed with the dissolution of the Benson Shirt Company, Inc., party of the first part; and it is expressly understood and agreed, that the power of attorney hereby given, is irrevocable, inasmuch as said power of attorney is coupled with an interest.

" *Eighth.* In case Benson Shirt Company, Inc., party of the first part, should continue in business for a period of eighteen (18) months, to wit: until June 30th, 1923, under the terms and conditions hereinbefore set forth, and should at the expiration of said eighteen (18) months, show a loss, then and in that event the corporation shall be forthwith dissolved, and for this purpose, each of the parties hereto, gives the other, full power of attorney, to proceed with the dissolution of the Benson Shirt Company, Inc., party of the first part; and it is expressly understood and agreed that said power of attorney is irrevocable, inasmuch as it is coupled with an interest."

This application was made in September, 1922, and hence the question whether the business should have been continued until December 31, 1922, or shut down earlier related to one of the expressed purposes of the arbitration agreement, namely, the carrying out of one of the terms and provisions of the agreement. Hence the motion should have been granted.

It follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

CLARKE, P. J., DOWLING, SMITH and McAVOY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs. Settle order on notice.